U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 MAR 17 PM 1: 34

CLERK

BY_____LG

DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JISELLA JOHANA PATIN PATIN,      )
                                 )
        Petitioner,              )
                                 )
    v.                           )      Case No. 2:26-cv-71
                                 )
DONALD J. TRUMP et al.,          )
                                 )
        Respondents.             )

**ORDER ON PETITION FOR HABEAS CORPUS**
**(Doc. 1)**

Petitioner Jisella Johana Patin Patin, a resident of Vermont and a citizen of Ecuador, was detained in her home by U.S. Immigration and Customs Enforcement ("ICE") on March 11, 2026. She was initially detained at Chittenden Regional Correctional Facility ("CRCF") in South Burlington, Vermont, then released into DHS custody. (*See* Doc. 1.) Though briefly transferred out of Vermont, DHS has since returned her to CRCF.

On March 12, 2026, Ms. Patin Patin filed a habeas petition challenging her arrest and detention under the Fourth and Fifth Amendments. (Doc. 1.) On her Fourth Amendment claim, she argues that ICE detained her in her home without probable cause or a valid warrant. (*Id.* at 6 ¶ 22.) In her Fifth Amendment claim, she contends that ICE detained her without conducting an individualized assessment as to her flight of risk or dangerousness to the community, in violation of her constitutional right to due process of law. (*Id.* at 6 ¶ 21.) This Order memorializes the court's ruling from the bench on March 16, 2026, ordering Ms. Patin Patin's release.

I.      **Background**

The facts in this case are not in dispute.

Ms. Patin Patin is an asylum seeker from Ecuador. (Doc. 9-1 ¶ 2.) She, her husband, and her two young children entered the U.S. without inspection in January 2023 and were placed in removal proceedings in February 2023. (*See* Doc. 1; Doc. 1-3; Doc. 6-1; Doc. 9-1 ¶ 4.) The final hearing on her asylum application and potential removal from the United States is scheduled for December 15, 2027. (Doc. 1-3.) Before her arrest on March 11, 2026, Ms. Patin Patin lived with her family in South Burlington, Vermont. Her children attend South Burlington schools, and she has a job in the community with valid work authorization. (Doc. 1 at 5 ¶ 15; Doc. 9-1 ¶ 3.) She has no criminal history.

On March 11, 2026, ICE officers surrounded Ms. Patin Patin's home, hoping to detain a man who appears to be an acquaintance of Ms. Patin Patin's. (Doc. 9-1 ¶ 17.) He did not live in Ms. Patin Patin's home. (*Id.* ¶ 13). When the ICE officers ultimately obtained a judicial warrant to search the home for the individual, they broke down the door. (Doc. 1 at 5 ¶¶ 16–18.) Though they did not find the person for whom they were looking, the ICE agents arrested Ms. Patin Patin, her sister, and one of her roommates and took them into custody. (Doc. 9-1 ¶¶ 10–16.) They did so after asking the occupants if they had "papers to be here," and after the occupants responded that they were "in the process." (*Id.* ¶ 15.) The officers did not conduct an individualized assessment of Ms. Patin Patin's dangerousness to the community or flight risk. Nor was Ms. Patin Patin afforded the opportunity to have a bond hearing before an immigration judge. Rather, as discussed below, ICE took the position that her detention was mandatory and that she was not eligible for a bond hearing.

At a hearing on Ms. Patin Patin's habeas petition on March 16, 2026, witnesses described Ms. Patin Patin as a dedicated and loving mother, a hard worker, and an engaged community member. In particular, Ms. Patin Patin is involved in a local family center where parents and

2

children can connect, play, and provide mutual support. Witnesses testified that Ms. Patin Patin and her husband frequently bring their children, ages four and eight, to the family center. Ms. Patin Patin also serves on the center's advisory board, where she frequently contributes ideas on how to better support parents who are new to Vermont or who, like her, are immigrants. She has helped other Spanish-speaking parents integrate into the family center's community and has furthered the center's goals of being a more welcoming space for people with different backgrounds. In addition to the testimony of these witnesses, counsel represented that more than 100 community members have written letters of support for Ms. Patin Patin.

## II.    Analysis

### A.    Procedural Due Process

The Immigration and Nationality Act ("INA") provides for the detention of certain noncitizens during the pendency of their immigration proceedings. For noncitizens without an order of removal, detention is governed by 8 U.S.C. §§ 1225(b), 1226(a), or 1226(c). Generally, § 1225(b) applies to "arriving" noncitizens or "applicants for admission" who are "seeking admission." Section 1226(c) governs the detention of noncitizens apprehended within the United States on criminal grounds. Section 1226(a) governs the detention of any other noncitizen apprehended by immigration enforcement and has long been understood to apply to noncitizens "already present in the United States," i.e., no longer at the border. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226(a) creates a statutory right to a bond hearing before an immigration judge, but §§ 1225(b) and 1226(c) call for mandatory detention. *Id.* at 302, 305–06.

In addition to creating a statutory right to a bond hearing, § 1226(a) includes certain other procedural safeguards. To conduct an arrest under 1226(a), an ICE officer must either (1) have an administrative warrant for the noncitizen's arrest, 8 U.S.C. § 1226(a); or (2) have "reason to

3

believe that the [noncitizen] . . . is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for [their] arrest," 8 U.S.C. § 1357(a)(2). Additionally, for noncitizens arrested under 1226(a) without a warrant, ICE must review the noncitizen's case and make a decision within 48 hours of arrest as to whether ICE will continue to detain the noncitizen or release them on bond. 8 C.F.R. § 287.3(d). If the noncitizen disagrees with ICE's custody determination, it is at that point that they may request a bond hearing before an immigration judge. 8 C.F.R. § 1236.1(d).

The Government takes the position that Ms. Patin Patin was subject to mandatory detention under § 1225(b) and was not, therefore, entitled to an individualized custody determination by either an ICE officer or an immigration judge. Ms. Patin Patin argues that she was subject to discretionary detention under § 1226(a) and *was* entitled to an individualized custody determination and a bond hearing. This court has now considered on several occasions whether § 1225(b) or § 1226(a) governs the detention of noncitizens who, like Ms. Patin Patin, entered the United States without admission or inspection but have been living in the United States.[1] In each case, the court has concluded that § 1226(a) governs the detention of noncitizens in Ms. Patin Patin's position. For the reasons articulated in those opinions, the court reaches the same conclusion here.

Because Ms. Patin Patin's petition challenges her detention on constitutional rather than statutory grounds, the court must consider whether her detention without an individualized custody determination or the opportunity for a bond hearing violated her procedural due process

---

[1] *See, e.g., Lopez v. Trump*, No. 25-cv-863, 2025 WL 3264151 (D. Vt. Nov. 17, 2025); *Lala Inamagua v. Hale*, No. 25-cv-892, (D. Vt. Dec. 1, 2025), ECF No. 19; *Cabrera-Lopez v. Hyde*, No. 26-cv-17, 2026 WL 540131 (D. Vt. Feb. 26, 2026); *Yupangui v. Hale*, No. 25-cv-884, 2025 WL 3207070 (D. Vt. Nov. 17, 2025); *Ruiz v. Trump*, No. 26-cv-12, 2026 WL 323254 (Feb. 6, 2026).

4

rights under the Fifth Amendment.  To make this determination, the court applies the balancing test from *Mathews v. Eldridge*, which considers the following factors:  (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. 319, 335 (1976).

"Many courts in this circuit have considered whether it violates due process for the government to deny bond hearings to noncitizens detained under § 1226(a).  The answer is a resounding 'yes.'"  *De Souza Ribeiro v. Turek*, No. 26-cv-15, slip op. at 17 (D. Vt. Feb. 23, 2026) (collecting cases).  The same is true in Ms. Patin Patin's case.[2]

### 1.    Private Interest

The private interest in this case is "the most significant liberty interest there is—the interest in being free from imprisonment."  *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020).  And the deprivation is "not the result of a criminal adjudication."  *Id.*  Yet, she was detained at CRCF, a prison, where her freedoms were severely restricted.

---

[2] The Government argues that, under *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), Ms. Patin Patin is entitled only to the procedural protections provided to her by statute.  Even if *Thuraissigiam* controls here, § 1226(a) entitles Ms. Patin Patin to a bond hearing before an immigration judge, so *Thuraissigiam* is no barrier to her habeas petition.  *Thuraissigiam*'s holding is not that arriving noncitizens have no due process rights beyond what Congress provides but that they have "only those rights *regarding admission* that Congress has provided by statute.'"  *Mata Velasquez v. Kurzdorfer*, 795 F. Supp. 3d 128, 147 (W.D.N.Y. 2025) (emphasis in *Mata Velasquez*; quoting *Thuraissigiam*, 591 U.S. at 140).  In other words, the due process right at issue in *Thuraissigiam* was the right to be admitted to the United States, not the right to be free from arbitrary detention.

5

Ms. Patin Patin has also developed significant ties in the United States, which heighten her private interest in her liberty. *See DHS v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (noting that "[noncitizens] who have established connections in this country have due process rights in deportation proceedings"). Ms. Patin Patin has lived in the United States since 2023. She has a partner and two young children who live here with her. She has a job and a community. The loss of that life is a serious deprivation.

### 2.      Risk of Erroneous Deprivation

In the civil immigration context, detention "has two regulatory goals: ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (cleaned up). Thus, if Ms. Patin Patin was being detained despite the fact that she was neither a flight risk nor a danger to the community, the Government was erroneously depriving her of her freedom.

Without an individualized assessment by an ICE officer or a bond hearing before an immigration judge, the risk of an erroneous deprivation for someone detained under § 1226(a) is high. Section 1226(a) "vests broad authority to arrest and detain noncitizens," *Lopez Benitez*, 795 F. Supp. 3d at 492, providing that, "pending a decision on whether [a noncitizen] is to be removed from the United States," the Attorney General "may . . . detain" the noncitizen or "may release" the noncitizen on "bond" or "conditional parole." 8 U.S.C. § 1226(a). Thus, "due process must account for the wide discretion that [§] 1226(a) vests in the Government to arrest *any* person in the United States suspected of being removable." *Lopez Benitez*, 795 F. Supp. 3d at 492 (quoting *Reyes v. King*, No. 19 Civ. 8674, 2021 WL 3727614, at *6 (S.D.N.Y. Aug. 20, 2021)). And § 1226(a)'s implementing regulations specifically create a procedure to protect

6

against erroneous deprivations: individualized custody determinations by ICE officers and bond redetermination hearings before an immigration judge. *See* 8 C.F.R. § 1003.19.

Before the March 16 hearing, the risk of erroneous deprivation for Ms. Patin Patin was high. She had received no process whatsoever, "and the risk of erroneous deprivation [wa]s correspondingly greater." *Black v. Decker*, 103 F.4th 133, 152 (2d Cir. 2024). Moreover, the record in this case clearly demonstrates that Ms. Patin Patin is neither a danger to the community nor a flight risk. She has a pending application for asylum with an immigration court, she has a family and community ties, and she has no criminal record. At the March 16 hearing, the Government made no argument to the contrary, submitted no evidence, and declined to cross-examine the witnesses testifying on Ms. Patin Patin's behalf. By all accounts, Ms. Patin Patin is an asset to her community, not a threat to it, and she is committed to pursuing her asylum application.

### 3.    The Government's Interest

As already noted, the Government has a legitimate interest in ensuring that noncitizens appear at their immigration proceedings and in preventing noncitizens from perpetrating harm in their communities during the pendency of their removal proceedings. As in *Black*, "the additional procedural safeguards [the court] would allow here under *Mathews* do nothing to undercut those interests." 103 F.4th at 153. To the contrary, as noted above, the record clearly demonstrates that Ms. Patin Patin is neither a flight risk nor a danger to the community.

The court also notes that, when a petitioner has an asylum application pending, "courts in this circuit have weighed that factor in favor of the petitioner—and have done so without inquiring into the underlying strength of the application—because of the 'possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the

7

Petitioner pending a final determination as to whether he is removable.'" *Rashid*, 807 F. Supp. 3d 349, 370 (quoting *Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)).

Finally, as the Second Circuit noted in *Black* and *Velasco Lopez*, any administrative burden imposed by providing Ms. Patin Patin with a bond hearing would likely be outweighed by the reduced cost of unnecessarily detaining a noncitizen who is neither a flight risk nor a danger to the community.

With respect to the INA's mandatory detention statutes, the Supreme Court has held that due process does not require an initial assessment of the noncitizen's dangerousness or flight risk. *Demore v. Kim*, 538 U.S. 510, 530 (2003). In turn, the Second Circuit has held that immigrant subject to mandatory detention must be afforded a bond hearing if the detention becomes unreasonably prolonged. *Black*, 103 F.4th at 151. Here, Ms. Patin Patin had a heightened liberty interest given her lengthy residence in the United States, and, for the same reasons, the risk of an erroneous deprivation of that liberty was also higher. The *Mathews* factors therefore demonstrate that Ms. Patin Patin's detention with no process afforded to her violated her rights under the due process clause of the Fifth Amendment, even in the context of her relatively brief detention.

### 4.    Relief

In past cases concerning the debate between § 1225(b) and § 1226(a), the court has concluded that the appropriate remedy was a bond hearing in immigration court, as provided for by § 1226(a). The court has reached that conclusion because it respects the immigration court's particular expertise in immigration issues and its role in making bond determinations as part of its regular duties.

8

In this case, at Ms. Patin Patin's March 16 hearing, the court concluded that the appropriate remedy to the Fifth Amendment violation was Ms. Patin Patin's immediate release. This court has inherent authority to order release in a habeas case. *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001). And the particular circumstances in this case warranted that remedy.

For guidance in reaching this conclusion, the court looked to *Mapp v. Reno*, a Second Circuit case that "establish[es] the legal standard for the exercise of a court's inherent authority to admit to bail individuals properly within their jurisdiction." *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 228 (D. Vt. 2025). *Mapp* concerned the standards for granting bail pending a final decision on a habeas petition, a different issue than the one faced by the court in this case. This case, by contrast, concerned a final bond determination. Nevertheless, *Mapp* is relevant here because it addresses the circumstances in which a court should deviate from its normal practice and grant immediate release to a habeas petitioner. In *Mapp*, the concern was the implication of continued detention pending a decision on the habeas petition. Here, the court's concern was subjecting Ms. Patin Patin to further detention pending a bond hearing in immigration court. These situations are analogous.

In *Mapp*, the court held that "a court considering a habeas petitioner's fitness for bail must inquire into whether the habeas petition raises substantial claims and whether extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." *Mapp*, 241 F.3d at 230 (cleaned up). This is a "difficult" standard to meet. *Id.* at 226; *see also Wall v. United States*, 619 F.3d 152, 155 n.4 (2d Cir. 2010) (standard is "rigorous").

As for "substantial issues," the court has concluded that a Fifth Amendment violation occurred. Unlike a *Mapp* analysis, the court is not merely determining that Ms. Patin Patin has

raised a serious claim but that she has brought a successful claim. In this case, "law and justice require" immediate release. 28 U.S.C. § 2243.

More relevant here is the notion of "extraordinary circumstances" that make immediate release "necessary to make the habeas remedy effective." *Mapp*, 241 F.3d at 230. The extraordinary circumstances here are twofold. First, more clearly than in any other immigration habeas case this court has handled, Ms. Patin Patin is neither a flight risk nor a risk to her community. The Government did not attempt to make an argument to the contrary, and there is ample evidence in the record for the court to reach this conclusion with confidence.

Given the clarity of the evidence on Ms. Patin Patin's character and commitment to her immigration process, her continued detention without a bond hearing would not have been just a procedural due process violation; it also would have been a clear and continuing violation of her substantive due process right to be free from civil detention that serves no legitimate governmental purpose. It was not, therefore, sufficient to provide her with the procedural remedy of a bond hearing before an immigration court. Only immediate release could abate the constitutional harm.

In deciding to release Ms. Patin Patin, the court also had to confront the extraordinary context in which her arrest took place. The Government has adopted a policy of mass detention for immigrants despite the constitutional limitations on civil detention. ICE frequently makes arrests without an administrative warrant or an individualized assessment of flight risk or danger to the community, as it is their position that almost every undocumented person in the country is subject to mandatory detention. And many of the individuals caught in the Government's net, like Ms. Patin Patin, are not specific targets for enforcement. Rather, their arrests are the product of being in the wrong place at the wrong time. The Government has no reason to believe that

immigrants arrested in that manner pose any particular flight risk or risk to the community. As a result, tens of thousands of immigrants have been detained in the last year without an initial assessment by the Government that the detention serves a legitimate and constitutional purpose. The longer that immigrants like Ms. Patin Patin must wait to regain their freedom, the more effective the Government's policy of mass detention becomes in sowing fear and convincing immigrants with meritorious cases to abandon their pursuit of legal status in this country.

A habeas remedy that allows unconstitutional government conduct to achieve its aim is not an effective one. Following the guidance and reasoning of *Mapp*, the extraordinary circumstances described by the court warranted Ms. Patin Patin's immediate release.

## B.    Fourth Amendment

The parties have not had the opportunity to fully brief the Fourth Amendment issue. At the March 16 hearing, the court directed Ms. Patin Patin's counsel to discuss whether she would proceed with the Fourth Amendment claim now that she has been released.

<strong><u>Conclusion</u></strong>

Ms. Patin Patin's Petition (Doc. 1) is GRANTED as follows. The court DECLARES that Ms. Patin Patin's detention violated her due process rights under the Fifth Amendment. The court therefore ORDERS her immediate release from custody. The court further ORDERS that Ms. Patin Patin not be removed from the United States before a final decision on her asylum application is reached in her removal proceedings and then only if her claims to relief are denied.

Dated at Burlington, in the District of Vermont, this 17th day of March, 2026.

Geoffrey W. Crawford, Judge
United States District Court

11